

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **REUBEN JACKSON**, | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV-98-N-2718-S |
| **THE CITY OF BIRMINGHAM, et al.**, | ] | |
| Defendant(s). | ] | |

## Memorandum of Opinion

### I. Introduction.

The court has for consideration defendants' motion (Doc. No. 7) for summary judgment, filed January 18, 2000. The plaintiff brings suit against Officer Roger Copes and Officer Winthrop Nall alleging that they deprived him of his constitutional rights under the Fourth and Fourteenth Amendments, respectively.[1] Specifically, Mr. Jackson alleges that Officer Copes violated his Fourth Amendment rights when Officer Copes used excessive force in arresting and detaining him. Additionally, Mr. Jackson argues that Officer Nall violated his Fourteenth Amendment rights by acting with deliberate indifference to his serious medical needs. The defendants have moved for summary judgment, arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Furthermore, the defendants insist that Officer Copes and Officer Nall are

---

[1] The plaintiff initially filed suit against the City of Birmingham as well, but on March 9, 2000, he filed a stipulation of dismissal (Doc. No. 18) with prejudice as to the City of Birmingham.



entitled to the defense of qualified immunity. The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motion will be **GRANTED**.

## II. Facts.

On October 27, 1996, the plaintiff and George Williams were drinking beer on the porch of the house they shared with Annette Render, who was the plaintiff's girlfriend and Mr. Williams' sister. Apparently, a fight between the plaintiff and Mr. Williams ensued and Mr. Williams picked up a brick and hit the plaintiff on the head. Mr. Williams then retrieved a butcher knife and began swinging the knife at the plaintiff, finally striking him. Officers Copes and Mark Hughes arrived at the scene and the plaintiff was handcuffed. The plaintiff was arrested and charged with affray and disorderly conduct.

It is undisputed that the fire department and/or ambulance responded to the scene, checked the plaintiff, and stated to the plaintiff that he probably had a punctured lung. The plaintiff alleges that he was cooperative but was beaten by sticks and maced twice before being driven to the hospital. Officer Copes alleges that the plaintiff was not cooperative, and was maced because he was spitting, kicking, and cursing at the officers. Officer Copes further alleges that he did not use a night stick on the plaintiff. After being placed in the car, the plaintiff was maced again by Officer Copes, allegedly for trying to kick out the windows in the car.

Officer Copes then took the plaintiff to Cooper Green Hospital where he was immediately taken to a treatment room and seen by a triage nurse. Officer Copes told the nurse that the plaintiff had been stabbed. The plaintiff disputes the assertion that he was disorderly and refused treatment by Dr. Nkemdilem J. Uzo. However, it is undisputed that

"Dr. Uzo upon examining the records of Jackson's first visit to Cooper Green Hospital in the early morning of October 28, 1996 noted that she entered in the records that Jackson refused everything." Movants' statement of facts (Doc. No. 8) ¶ 41. Further, it is undisputed that Dr. Uzo determined from a visual inspection that the plaintiff had a superficial stab wound and testified that there was nothing she could do to force the plaintiff to be treated. *Id.* at ¶¶ 46-47. The plaintiff admits that the doctor told him that he probably had a punctured lung, and that Dr. Uzo explained to Officer Copes and the plaintiff the risks of a possible pneumothorax, including sudden death. Dr. Uzo told Officer Copes that he needed to inform the jail of the plaintiff's condition and return him to the hospital as soon as possible if he had shortness of breath, although the plaintiff did not have any shortness of breath at that time. Dr. Uzo also gave Officer Copes a sheet of written instructions to give the jail.

The plaintiff alleges that he was maced again in the police car before leaving the hospital for the jail. At the jail, it is undisputed that Officer Copes gave the jail staff the release information from the hospital and the instructions regarding the plaintiff's condition, and also explained to jail personnel that the plaintiff had special medical instructions. Officer Nall booked the plaintiff into the jail and alleges that he remembers the plaintiff being disorderly. Officer Nall testified that he did not remember receiving special instructions on the plaintiff's medical care but stated that there were three or four other officers in the booking area who could have received the information. Officer Nall did remember asking the plaintiff questions from a form related to his medical condition and alleges that the plaintiff refused to cooperate. The plaintiff alleges that he told jail staff that

he wanted to be treated for his punctured lung and needed to be in the hospital. The plaintiff was placed in a cell alone without a chair or bed.

The next morning, it is undisputed that the plaintiff told the jail staff that he needed to go to the doctor. The defendants assert that Mr. Jackson was taken to the hospital within 30 minutes, while Jackson alleges that he was taken to the hospital within 30 to 45 minutes. Upon arriving at the hospital, it is undisputed that the plaintiff was breathing comfortably and without apparent distress. X-rays were taken, and a surgical procedure was performed on the plaintiff's punctured lung.

## III.    Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party

4

support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV.   Discussion.**

Both Officer Copes and Officer Nall assert the defense of qualified immunity against the claims of the plaintiff. A government official performing discretionary functions is entitled to qualified immunity "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

6

*v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (quoting *Harlow*, 457 U.S. at 818). A right may only be clearly established where "the contours of the right [are] sufficiently clear [so] that a reasonable official . . . understand[s] that what he is doing violates that right." *Cofield v. Randolph County Comm'n*, 90 F.3d 468, 470 (11th Cir. 1996).

Qualified immunity almost always protects government actors; "only in exceptional cases will [they] have no shield against claims made against them in their *individual capacities*." *Lassiter*, 28 F.3d at 1149 (emphasis in original). In fact, qualified immunity almost always applies to damages claims, but as the Eleventh Circuit has noted, "the defense is a narrow one, leaving plaintiffs other avenues of relief." *Id.* at 1149 n.2. A plaintiff may bring a claim for damages against government actors in their official capacity absent Eleventh Amendment immunity, or may seek injunctive relief. *Id.*

In this circuit, courts are instructed to use a two-part analysis for qualified immunity claims. The initial burden is on the public official to establish, at the time of the occurrence of the matters complained of, that he was acting within the scope of his discretionary authority. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983). Then, in order to impose liability upon defendant government officials, the plaintiff must establish the absence of objective good faith by demonstrating that "the official's alleged misconduct was

7

'objectively unreasonable' in that it violated clearly established law." *Schopler v. Bliss*, 903 F.2d 1373, 1380 (11th Cir. 1990) (quoting *Harlow*, 457 U.S. at 818). "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion, for every like-situated, reasonable government agent, that what the defendant is doing violates federal law in the circumstances." *Lassiter*, 28 F.3d at 1150.

Qualified immunity is applicable only to claims for monetary relief made against public officials acting in their individual capacities. Here, the plaintiff has made a claim for damages against both Officer Copes and Officer Nall. The plaintiff asserts that Officer Copes used excessive force in arresting him by beating and macing him when he did not pose a threat to anyone and after the plaintiff was already handcuffed and in the police car.

It is uncontested that Officer Copes was exercising discretionary authority on the occasion when the plaintiff claims Officer Copes used excessive force. Although Officer Copes denies beating the plaintiff with a nightstick, he concedes using mace on the plaintiff. The court finds that even if such force was exercised by Officer Copes, the plaintiff points to no case on all fours with the present factual situation that would "dictate, that is truly compel" another police officer in the same situation to conclude that what he is doing violates federal law. *Lassiter*, 28 F.3d at 1150. Even though the plaintiff asserts that at the time of his arrest he was not acting disorderly, there is no dispute that he had been drinking beer the night of the incident and had been engaged in a fight with another person that involved a butcher knife and a brick. The very fact that the plaintiff was under the influence of alcohol at the time of the arrest and had just been involved in an altercation with deadly

weapons calls into question whether Officer Copes' alleged misconduct was objectively unreasonable given the circumstances.

Furthermore, although the plaintiff disputes the defendants' assertions that he was trying to swing at the officers, was unruly, continued to spit and kick at the officers after being handcuffed, and tried to kick out the windows of the police car after being placed there, see Movants' Statement of Facts (Doc. No. 8) ¶¶ 12, 24-26, the plaintiff's deposition testimony cited to contradict these assertions does not create an issue of material fact. Opponent's statement of facts in response (Doc. No. 14) ¶¶ 12, 24-26. The plaintiff testified in his deposition that when he asked to go to the doctor, the officers told him to shut up, hit him with sticks, and threw him in the police car, and maced him. Opponent's evidence (Doc. No. 15) Jackson deposition at 43-44. Although the plaintiff's actions appear to be benign based on his summary and oversimplification of the events surrounding his arrest, the plaintiff never testified that he did not swing, spit and kick at the officers or later try to kick out the windows of the police car.

Furthermore, although the plaintiff disputes being aggressive, cursing at the hospital staff at Cooper Green Hospital, and refusing treatment, there is no dispute that "Dr. Uzo upon examining the records of Jackson's first visit to Cooper Green Hospital in the early morning of October 28, 1996 noted that she entered in the records that Jackson refused everything." Movants' statement of facts (Doc. No. 8) ¶ 41; Opponent's statement of facts in response (Doc. No. 14) ¶ 41. There is also no dispute that "Dr. Uzo testified that there was nothing she could do to force Jackson to be treated on his first visit." Id. ¶ 47. Finally, there is no dispute as to the authenticity of the medical records, including Dr. Uzo's

9

assessment, which states that the plaintiff was "<u>extremely</u> aggressive and disorderly, spitting, cursing, refusing to be treated. Refuses vital signs, exam of chest, CXR,[2] UDS[3] or any blood work." Movants' evidence (Doc. No. 10) exhibit 6. The records further state: "pt continuously screaming, cursing, wants to go to jail. Insists on no treatment. Refuses suturing of wound. Explained to patient thoroughly at length the risk of refusing treatment. The risks of possible pneumothorax with stab wound." *Id.* A nursing assessment indicated that the plaintiff smelled of alcohol, and when he was initially brought into the emergency room, he was "uncooperative, hostile, and verbally abusive. . . . Pt states 'Let them take me to jail. I don't want no x-rays.' When approached pt became more unruly and hostile." *Id.* Fifteen minutes later, the nurse noted that the plaintiff was "still hostile and uncooperative. Refused to have vital signs taken." *Id.* Thirty minutes after arriving in the emergency room, the nurse noted the same information, and forty-five minutes later, the nurse noted that the plaintiff was "screaming 'Don't mess with me. Take me back to jail now!'" *Id.* Finally, an hour after being in the emergency room, the plaintiff was still disruptive "screaming obscenities." *Id.* Upon discharge, the nurse noted: "To police car A + OX3 + hostile." *Id.* Considering all of the above factors, the court finds that the plaintiff has cited to no cases on point that would compel the conclusion that Officer Copes' actions were in violation of federal law. Accordingly, Officer Copes is entitled to qualified immunity.

---

[2] Apparently, "CXR" is an abbreviation for chest x-ray.

[3] "UDS" is short-hand for urine drug screen.

The plaintiff also asserts that Officer Nall, while "acting under color of state law," knew about his injury and was told by the plaintiff that he needed to see a doctor. However, the plaintiff was placed in a cell without a bed or a chair for the night and was not taken to the hospital until the next morning.

It is uncontested that Officer Nall was exercising discretionary authority on the occasion when the plaintiff claims he was denied medical treatment. Although at the time of the incident it was clearly established that a jail official violates a pretrial detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the known serious medical needs of the inmate, there is no case law establishing that Officer Nall's actions or inaction under the circumstances violated federal law. *See, e.g., Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

In the instant situation, Officer Nall was confronted with an arrestee who had been stabbed and had already been taken to the hospital before arriving at the jail. Although Officer Copes brought a form with him from the hospital stating that the plaintiff had a stab wound and needed to be returned to the hospital immediately *if* he experienced any shortness of breath, there is no evidence that Officer Nall received this form as there were other officers on duty in the booking area who may have received the information. More importantly, even if the plaintiff had requested to see a doctor after arriving at the jail, having just left the hospital, it is undisputed that the plaintiff was not experiencing any shortness of breath to warrant taking him back to the hospital. In fact, the plaintiff did not even exhibit such symptoms the next morning when he was taken to the hospital within 30

11

to 45 minutes of his request to see a doctor. There are simply no cases on point that would compel the conclusion that what Officer Nall did or did not do under the circumstances was in violation of federal law.[4] Accordingly, Officer Nall is entitled to qualified immunity.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 28th of March, 2000.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[4] The plaintiff also points to no cases that hold that a jail officer's decision to put an inmate in a cell with no bed or chair amounts to deliberate indifference, even when that inmate presents with a medical condition that may require him to be transported to the hospital immediately upon exhibiting certain symptoms.